UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TY'YELL M HALL, | |
| Plaintiff, | |
| v. | CASE NO. 3:22-CV-1043-SJF |
| ORNELAS, et al., | |
| Defendants. | |

**OPINION and ORDER**

On December 19, 2022, Plaintiff Ty'Yell M. Hall, a prisoner proceeding without a lawyer[1], filed a complaint under 42 U.S.C. § 1983 in the above-captioned case. The Court screened his complaint under 28 U.S.C. § 1915A to determine whether his case was frivolous or malicious, failed to state a claim upon which relief may be granted, or sought monetary relief against a defendant who is immune from such relief. On February 6, 2023, Mr. Hall was granted "leave to proceed against Officer Heinaman and Sergeant Ornelas (first names unknown) in their personal capacity for monetary damages for allegedly using excessive force against him in violation of the Eighth Amendment on September 25, 2021, by repeatedly shocking him with a tazer and causing their dog to bite him in the genitals while he was lying on the ground." [DE 5 at

---

[1] As discussed below, Mr. Hall retained counsel shortly after Defendants moved for summary judgment. Mr. Hall thus responded to Defendants' summary judgment motion through his counsel. Mr. Hall is again proceeding *pro se* because his counsel withdrew from the case after the motion was fully briefed and ripe for consideration.

1]. On April 20, 2023, the parties consented to the jurisdiction of the magistrate judge under 28 U.S.C. § 636(c). [DE 19].

On January 5, 2024, Defendants filed a Motion for Summary Judgment [DE 44], and a Motion to File and Maintain Under Seal Exhibit D-2 of the Summary Judgment Motion [DE 48]. Shortly thereafter, Mr. Hall retained counsel. [DE 51]. Mr. Hall, through counsel, requested two extensions of time to respond to Defendants' summary judgment motion, which the Court granted. [DEs 53, 55]. Mr. Hall then responded to Defendants' motion on March 22, 2024, and Defendants filed their reply in support of their motion on April 3, 2024. After Defendants' motions were fully briefed and ripe for ruling, Mr. Hall--again through his counsel—filed a Motion to Supplement Response to Motion for Summary Judgment [DE 59] on June 27, 2024. This motion became ripe on July 12, 2024, after Defendants did not respond.

The case was then reassigned to the undersigned magistrate judge on August 14, 2024, and the parties did not object to the continued exercise of jurisdiction by the undersigned. [*See* DE 60]. Mr. Hall's counsel then withdrew from this case on May 22, 2025. [DE 64, DE 68]. Around that same time, Mr. Hall filed a *pro se* Motion for Settlement Conference, which Defendants have opposed while their Motion for Summary Judgment remains pending. [DE 67].

With the parties' continued consent to the undersigned magistrate judge, the Court now enters the following opinion and order addressing all pending motions. For the reasons explained below, the Court: (1) grants Defendants' Motion to Seal [DE 48]; (2) denies Plaintiff's Motion to Supplement [DE 59]; (3) grants Defendants' Motion for

2

Summary Judgment [DE 44]; and therefore (4) denies as moot Plaintiff's Motion for Settlement Conference [DE 67].

I.   **Factual Background**

The following facts are undisputed.[2] Plaintiff Ty'Yell Hall is an offender in the custody of the Indiana Department of Correction ("IDOC"). Mr. Hall is currently incarcerated at the New Castle Correctional Facility, but during the incident at issue here, Mr. Hall was incarcerated at the Miami Correctional Facility ("MCF") in Bunker Hill, Indiana. [DE 46 ¶1; DE 56-1 at 1, ¶3].

Defendant Casey Hindman[3] was employed at the MCF as a Correctional Officer during the incident at issue. As a correctional officer, Officer Hindman oversaw incarcerated individuals on his assigned unit. [DE 46 ¶2]. Defendant Sonney Ornelas was employed as a sergeant at MCF at this time and worked as a K9 handler. [*Id.* ¶3]. Sgt. Ornelas had more than three years of experience working with the K9s. [*Id.*] K9s are trained to protect their handler if another person comes within ten feet of them. [*Id.* ¶5]. Thus, inmates are "advised to stay at least ten feet away from the K9s" and they "are further advised that taunting or lunging at the K9 units will not be tolerated." [*Id.*] Relevant here, Sgt. Ornelas worked with a K9 partner named Odin, a Belgian Malinois, who weighs between 60 and 70 pounds. [*Id.* ¶4].

---

[2] As explained in Section III.A. *infra*, Plaintiff's response brief appears to disregard the Court's local rules, particularly, N.D. Ind. L.R. 56-1(b)(2). The Court has thus considered Defendants' Statement of Material Facts [DE 46] as undisputed, as permitted by Fed. R. Civ. P. 56(e).

[3] Defendant Hindman was incorrectly named as Officer Heinaman in Mr. Hall's complaint.

3

On September 25, 2021, Officer Hindman was working in the Phase 2 Yard by the KHU dorm at MCF. [*Id.* ¶6]. Mr. Hall was out in the Phase 2 Yard and was complaining "profanely that he did not have the appropriate clothing for chow." [*Id.* ¶7]. Officer Hindman allowed Mr. Hall to return to his dorm so that he could get proper clothes for chow. [*Id.*]. Mr. Hall went to his dorm and obtained a blue shirt, the proper attire for chow. [*Id.* ¶8]. But Mr. Hall did not fully put the shirt sleeves on. [*Id.*]. Officer Hindman ordered Mr. Hall to put on his shirt properly, but Mr. Hall refused and instead kept walking toward the chow hall. [*Id.* ¶¶9-10]. Sgt. Ornelas also instructed Mr. Hall to put his on shirt properly, and Mr. Hall then "became disorderly and refused to comply with orders." [*Id.* ¶11]. Sgt. Ornelas thus further advised Mr. Hall that he needed to put on his shirt properly and to cease "making aggressive stances toward staff." [*Id.*]. Sgt. Ornelas explained to Mr. Hall that if he failed to do so, he would need to return to his dorm and would not be able to go to chow. [*Id.*]

Both Sergeant Ornelas and Officer Hindman ordered Mr. Hall to stop walking. Mr. Hall responded to these orders profanely and with vulgarities. [*Id.* at 2, ¶¶12-13]. Sgt. Ornelas then gave Mr. Hall a clear order to stop walking and to turn around, but Mr. Hall refused. [*Id.* ¶14]. Mr. Hall continued to walk toward chow. [*Id.*] Sgt. Ornelas blocked the sidewalk with his K9. Officer Hindman ordered Mr. Hall to either return to his dorm or to stop and get on the ground. [*Id.* ¶15]. Sgt. Ornelas also stepped on the sidewalk so that Mr. Hall would stop walking toward chow. [*Id.* ¶16]. Sgt. Ornelas ordered Mr. Hall to stop walking and further warned him that he would release the K9 if Mr. Hall did not stop walking toward him. [*Id.* ¶18]. But Mr. Hall kept walking,

4

ultimately closing the 10-foot gap that he was supposed to keep between himself and the K9. [*Id.* ¶¶17, 20]. Mr. Hall does not deny he refused to follow orders, and he knew that he needed to stay at least 10 feet away from a K9. [*Id.* ¶¶19, 22].

When Mr. Hall came within 10 feet of the K9 and Sergeant Ornelas, Sgt. Ornelas deployed the K9. [*Id.* ¶23]. The K9 jumped at Mr. Hall but missed initially. [*Id.* ¶25]. After that, Officer Hindman deployed his taser, a lesser level of force than a K9. [*Id.* ¶¶26-27]. Officer Hindman disengaged his taser before a full cycle occurred, as the K9 then reengaged, this time latching on to Mr. Hall's clothes in the inner thigh area. [*Id.* ¶28]. Mr. Hall then went to the ground, and Sgt. Ornelas disengaged the K9. [*Id.* ¶29]. Approximately eight seconds elapsed between the K9's deployment and disengagement. [*Id.* ¶31].

Another correctional officer, non-party Lieutenant Morgan, then placed Mr. Hall in mechanical restraints and escorted him to medical. [*Id.* ¶32]. Mr. Hall was then assessed by Nurse Ashley Wilson. [*Id.* ¶34; DE 44-10]. Nurse Wilson found that Mr. Hall "had a small puncture wound in his arm from the taser" but medical staff "could not locate any marks in the groin area." [DE 46 ¶34, 35;]. Medical records document that "all skin [was] intact to scrotum and penis, [and] no redness, bruising, or edema noted in the area." [*Id.* ¶35; DE 44-10 at 17].

Mr. Hall did request an acetaminophen refill on October 13, 2021, because of pain with arousal, stating that he needed acetaminophen because his was bitten in the "penis and testicals [sic]" and because he had a hernia. [DE 46 ¶42; DE 44-10 at 8]. Eight days later, on October 21, 2021, Mr. Hall requested another acetaminophen refill reporting

5

pain in other areas. [DE 46 ¶43; DE 44-10 at 9]. Mr. Hall was then assessed by a doctor on October 26, 2021. During the examination, Mr. Hall reported a bite on his penis and testicle area. Mr. Hall also reported that "with arousal he develops throbbing pain but that has been gradually decreasing." [DE 46 ¶44; DE 44-10 at 34]. After that date, however, Mr. Hall did not report any other pain in his penis. [DE 46 ¶45]. Mr. Hall described himself as "fully recovered" from this incident. [*Id.* ¶48].

## II. Legal Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003).

The Court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is a material dispute that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed,

the court is not "obligated to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Thus, to overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. The nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322–23; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Mr. Hall alleges that Defendants used excessive force against him on September 25, 2021, when Defendants deployed a taser and K9 as Mr. Hall walked on the sidewalk between his dorm and the chow hall. Defendants have moved for summary judgment contending that the undisputed material facts show that the force involved in the incident was justified and minimal. Defendants also maintain that they are entitled to qualified immunity. [*See* DE 45 at 10-12].

**III.    Discussion**

Before the Court addresses the merits of Defendants' summary judgment motion, the Court must take up several preliminary matters and ancillary procedural motions. The Court begins by addressing the numerous procedural deficiencies contained in Mr. Hall's response brief.

**A.    Procedural Deficiencies with Plaintiff's Response**

As stated, Defendants moved for summary judgment on January 5, 2024. Under this Court's local rules[4], a party moving for summary judgment must separately file: (1) a motion; (2) a supporting brief; and (3) a statement of material facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes (A) a short statement of each fact; and (B) a citation to evidence supporting each fact. *See* N.D. Ind. L.R. 56-1(a). Defendants' summary judgment filings comport with these rules, thus meeting their obligation as the moving party. [*See* DE 44 (motion); DE 45 (supporting brief); and DE 46 (statement of material facts)].

Plaintiff then responded on March 22, 2024, after requesting and receiving two extensions. [DE 56]. Under this Court's local rules, a party opposing summary judgment must separately file: (1) a response brief and (2) a Response to Statement of Material Facts that (A) restates verbatim the Statement of Facts, (B) includes a correspondingly numbered response immediately following each paragraph of the Statement of Facts, (C) a cites to evidence supporting each dispute of fact, and (D)

---

[4] The applicable rules became effective on February 25, 2022, about two years before the instant motion was filed.

includes additional facts in a section titled Additional Material Facts with numbered paragraphs continuing the sequential numbering of the Statement of Material Facts for each additional material fact the opposing party contends is undisputed which includes both (i) a short statement of each fact, and (ii) a citation to evidence supporting each fact. *See* N.D. Ind. L.R. 56-1(b)[5].

Plaintiff does include a "Brief in Opposition" as contemplated by N.D. Ind. L.R. 56-1(b)(1). [*See* DE 57]. But Plaintiff's response ignores the requirements listed in N.D. Ind. L.R. 56-1(b)(2). Instead of including a separately filed Response to Statement of Material Facts as required by N.D. Ind. L.R. 56-1(b)(2), Plaintiff's Brief in Opposition merely includes a paragraph stating that he "adopts and incorporates Plaintiff's affidavit set forth in his statement of material facts[.]"[6] [DE 57 at 2]. Plaintiff's Affidavit, however, does not "restate[] verbatim the [Defendants'] Statement of Facts" nor does it include "a correspondingly numbered response immediately following each paragraph of the Statement of Facts" or a citation to evidence supporting each dispute of fact. *Id.* Plaintiff's Affidavit thus also fails to include a list of additional facts in a section titled Additional Material Facts as required. Thus, Plaintiff has not met his obligations as the nonmoving party under the local rules.[7]

---

[5] The rule applies when an opposing party is represented by counsel—and Mr. Hall had counsel at the time the response brief was filed. *See* N.D. Ind. L.R. 56-1(b)(3) (exempting *pro se* parties from this requirement).

[6] To support this adoption, Plaintiff cites N.D. Ind. L.R. 56-1(a)(3). But this rule provides for the moving party's obligations at summary judgment, not those of the opposing party.

[7] The Court notes that the substance of Plaintiff's response brief is deficient on numerous fronts as well. First, it is filled with typographical errors. *See, e.g.*, DE 57 at 6 ("Mr. Hall considers himself 'fully recovered' from the incident he describes in his complot.") Some of these errors result in statements contrary to Plaintiff's position on summary judgment. *See id.* at 8 ("They are entitled to qualified immunity from suit. Accordingly, summary judgment should be entered for Sgt. Ornelas and Officer

Defendants raise these procedural deficiencies in their reply brief and request that the Court treat all facts in their Statement of Material Facts [DE 46] as undisputed due to these deficiencies. As Defendants suggest, "[t]he district court is entitled to require strict enforcement with its local rules." *McCormick v. Goebel*, 655 F. Supp. 3d 748, 756 (N.D. Ind. 2023)(citing *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015). The Court included these requirements in the local rules because they facilitate the Court's ability to efficiently and justly resolve motions for summary judgment. Thus, parties' "[c]ompliance with these rules demonstrates respect for the process." *Robertson v. Marthakis*, No. 3:22CV887 DRL-AZ, 2025 WL 1784690, at *5 (N.D. Ind. June 25, 2025). When a party fails to comply with the local rules, the Court must then wade through a long record to find disputes of fact. But "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 353 (N.D. Ind. 2021) (stating that "it isn't the court's job to find the needle in the haystack, the truffle in the field, or the Waldo on the page"). Accordingly, a non-moving party's failure to admit or deny facts as presented in the moving party's statement of facts "render[s] the facts presented by the moving party as undisputed." *Curtis*, 807 F.3d at 218-19; *see also* Fed. R. Civ. P. 56(e) ("If a party ... fails to properly address another party's assertion of fact as required by

---

Hindman, and against Plaintiff's pending Eighth Amendment claim.") Other parts of the response include incomplete or nonsensical sentences. *See id.* at 3 ("The [evidence] does not entitle Sgt. Ornelas and Officer Hindman to summary * The Plaintiff moves the court to take judicial notice of his information, pursuant to FRE 201(b)(c)(d) in that source of the information is attached and are from Nation Journals and/or Law school publication."). Other portions use improper rhetorical questions as a form of advocacy. *See id.* at 5: "How would you like [to be] tased and bitten for that time period for not having your shirt tucked in?" and *id.* at 6: "Who would do this if not in bad faith[?]"

10

Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ....").

Thus, the Court must determine whether to treat Defendants' Statement of Material Facts as undisputed here. The Court first notes that Plaintiff's counsel appeared on January 15, 2024, ten days after Defendants moved for summary judgment. This circumstance would generally counsel the Court to relax its requirements. But Plaintiff was then afforded two extensions of time before ultimately responding in opposition to summary judgment on March 22, 2024. [DE 53, DE 55]. This suggests that the deficiency did not stem from a lack of time. Rather, it suggests a lack of awareness of the court's rules at the time the response was filed. Even so, Defendants' reply brief filed fourteen days later raised the deficiencies with Plaintiff's Response, and Plaintiff did not seek leave to address the deficiencies. What's more, Plaintiff later filed a Motion to Supplement his Response to Defendants' motion, but this motion does not acknowledge the deficiencies or seek to supplement his response to correct the problems. Based on these circumstances, as well as Plaintiff's total failure to comply with the rules, the Court can only consider the facts listed by Defendants in their Statement of Material Facts [DE 46, ¶1-¶48] as undisputed, consistent with other courts in this district. *See* Fed. R. Civ. P. 56(c); *Szczepanski v. Dana, Inc.*, No. 1:22-CV-00318-GSL, 2024 WL 3594693, at *1 fn. 1 (N.D. Ind. July 31, 2024)(accepting the moving party's Statement of Facts as true where the non-moving party—represented by Plaintiff's same counsel here—"ma[d]e no attempt to comply with Fed. R. Civ. P. 56 or N.D. Ind. L.R. 56-1(b)"); *Buckley v. S.W.O.R.N. Prot. LLC*, No. 20-CV-357, 2022 WL 4598577, at *1 (N.D.

11

Ind. Sept. 30, 2022) (same); *but see Downey v. Hyatte*, No. 3:21-CV-131-SJF, 2025 WL 901559, at *2 (N.D. Ind. Mar. 25, 2025)(granting other counsel leave to amend his response to a motion for summary judgment when counsel's original response did not comply with N.D. Ind. L.R. 56-1(b)).

### B.     Plaintiff's Motion to Supplement Response to Summary Judgment

As noted above, on June 27, 2024, Plaintiff, through counsel, filed a Motion to Supplement Response to Motion for Summary Judgment. Through this motion, Plaintiff moved to supplement his response to Defendants' summary judgment motion to include documents showing that ultimately, Plaintiff was not disciplined for disorderly conduct from the incident at issue. Plaintiff contends that, if he "was [t]hreatening [c]onduct resulting in him being bitten in the groin/penis why was it thrown out?" [DE 59 at 2, ¶5].

An adverse party shall have fourteen days after service of a motion in which to serve and respond. N.D. Ind. L.R. 7-1(d)(3)(A). Failure to file a response within the time prescribed may subject the motion to summary ruling. N.D. Ind. L.R. 7-1(d)(5). As of this date, Defendants have neither responded to Plaintiff's Motion to Supplement, nor have Defendants explained the inaction. Consequently, this Court can only treat Plaintiff's Motion as unopposed.

The Court generally considers a motion for supplemental briefing based on "how helpful the new information will be in making a decision on the underlying motion." *Sajda v. Brewton*, 265 F.R.D. 334, 338 (N.D. Ind. 2009). But, as discussed above, the Court has deemed Defendants' Statement of Material Facts as undisputed. Accordingly, the

12

Court cannot fairly find that this new information will help determine whether summary judgment is appropriate. Thus, Plaintiff's motion to supplement must be denied.

### C. Defendants' Motion to Seal Exhibit D-2

Contemporaneous with their Motion for Summary Judgment, Defendants filed a Motion to File and Maintain Under Seal Exhibit D-2 to their summary judgment motion. Thus, the Court next considers whether this exhibit should remain under seal.

Northern District of Indiana Local Rule 5-3 provides that "[t]he clerk may not maintain a filing under seal unless authorized to do so by statute, court rule, or court order." N.D. Ind. L.R. 5-3(a). In the instant motion, Defendants present no statute or court rule that authorizes sealing the documents at issue. Therefore, the Court must determine whether good cause exists to maintain them under seal as requested. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Judicial records are presumed public unless "the property and privacy interests of the litigants . . . predominate in the particular case." *Id.* Establishing such predominance is often difficult as "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification" by the Court. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). The decision of whether good cause exists to file a document under seal rests solely with the Court. *Id.*

In support of the instant motion, Defendants explain that there is good cause to keep the exhibit under seal because it consists of photographs of Mr. Hall's genitalia

13

that were taken shortly after the incident at issue here. The Court agrees that Mr. Hall's privacy concerns provide the requisite good cause to maintain the images under seal even though they are cited as part of the record of the instant decision. Accordingly, Defendants' motion to seal will be granted. *K. C. v. Individual Members of Med. Licensing Bd. of Ind.*, No. 1:23-CV-00595-JPH-KMB, 2023 WL 3978425, at *1 (S.D. Ind. June 13, 2023)("Good cause to seal confidential information may exist . . .where documents contain . . . other categories of sensitive information.") *See also Williams v. Illinois*, No. 3:19-CV-739-MAB, 2022 WL 4598880, at *1 (S.D. Ill. Sept. 30, 2022)(sealing a prison's investigation report filed as part of briefing on a motion for summary judgment because it contained "sensitive and graphic information" including photographs of an inmate's deceased body).

### D.    Merits Analysis

The Court now turns to the merits of Defendants' summary judgment motion. As stated, Mr. Hall was granted "leave to proceed against Officer [Hindman] and Sergeant Ornelas . . . in their personal capacity for monetary damages for allegedly using excessive force against him in violation of the Eighth Amendment on September 25, 2021, by repeatedly shocking him with a tazer and causing their dog to bite him in the genitals while he was lying on the ground." [DE 5 at 1]. Defendants have moved for summary judgment contending that the force involved was justified and minimal and that Mr. Hall suffered only a *de minimis* injury. Defendants also contend that they have qualified immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate a "clearly established" constitutional or statutory right. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Once a defendant raises a qualified immunity defense, the plaintiff carries the burden of defeating it. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 359 (7th Cir. 2005). Evaluating this defense requires the Court to make two inquiries: (1) whether the facts—which the Court views in the light most favorable to Plaintiff—show a violation of a statutory or constitutional right, and (2) whether that right was "clearly established" at the time of the alleged violation. *Williams v. Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). "If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis in original).

The Court need not address the prongs in this order; instead, the Court may address the prongs in the order "best suited to the circumstances of the particular case at hand." *McAllister*, 615 F.3d at 881. Here, it makes sense to address the prongs in order, as Defendants' primary argument is that no constitutional violation occurred. Accordingly, the Court begins by considering whether the facts, viewed in the light most favorable to Mr. Hall, show a violation of his constitutional rights.

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits "unnecessary and wanton infliction of pain" on inmates. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Force must be "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam) (cleaned up). Force against an inmate is considered excessive when such force is used "not in a good-faith effort to

15

maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Accordingly, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. As direct evidence of intent is rare, the Court considers several factors to distinguish between good faith and malicious uses of force, including: (1) how much force was needed versus how much was applied; (2) whether the force was needed because of a risk to safety; (3) the effort made to limit the severity of force applied; and (4) the extent of injury inflicted. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). In the end, "correctional officers receive special deference in their approach to restoring or maintaining order and discipline." *Smith v. Kind*, 140 F.4th 359, 368 (7th Cir. 2025)(internal citations omitted).

The undisputed material facts show that Defendants did not use force until after Mr. Hall refused to comply with multiple verbal orders regarding his attire and his continued walk to chow. [*See* DE 46 at ¶¶ 9, 11, 12, 13, 14, 15, 18]. Moreover, the undisputed evidence shows that as Mr. Hall kept walking, he crossed the 10-foot gap between himself and the K9, even though he knew that he needed to maintain that distance. [*Id.* ¶¶20, 22]. These facts, when considered under factors 1 and 2, show force used in good faith to maintain order. Defendants have also presented evidence that they tried to limit the force applied, first by disengaging the taser after less than a full cycle, and second, by disengaging the K9 shortly after Mr. Hall was on the ground. [*Id.* ¶¶28-29]. These facts, when considered under factor 3 above, also show a good faith use of

force. Defendants also presented undisputed evidence that Mr. Hall did not have visible injuries in the groin area after the incident and that he now considers himself fully recovered. [*Id.* ¶¶35, 38]. These facts also suggest force inflicted in good faith under factor 4 above. Thus, the undisputed facts, when considered under these factors, show that Defendants used force as part of a good faith effort to discipline and maintain order. *Hendrickson*, 589 F.3d at 890.

In response, Mr. Hall does not dispute that he failed to obey orders. But Mr. Hall maintains that other inmates were improperly dressed that day, and that because the incident arose based on a failure to "tuck[] in a shirt," Defendants were never "in fear of their safety or lives." [DE 57 at 4]. Generally, however, "inmates may not pick and choose which orders to obey." *Smith*, 140 F.4th at 368. "When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009)(internal quotation omitted). Still, the court must "consider an inmate's disobedience, along with the surrounding 'facts and circumstances,' to determine whether a particular use of force was necessary." *Smith*, 140 F.4th at 358 (internal citation omitted). Here, even if Mr. Hall was not acting as profanely as Defendants have contended, it remains undisputed that he refused to obey orders, and his refusal included actions that brought him within ten feet of Sgt. Ornelas' K9—a rule that Mr. Hall was aware of. [DE 46 at ¶¶25, 26]. Thus, the undisputed materials facts show that Defendants "used force . . . in

17

a good-faith effort to maintain or restore discipline . . . ." *Hendrickson*, 589 F.3d at 890 (internal citation omitted).

Mr. Hall also contends that "[t]he officers could have detained [him] or sanction[ed him] in some other fashion"—such as simply allowing him to miss chow— citing to *Siers v. McGuire*, No. 314-CV-2031PS, 2015 WL 3739221 (N.D. Ind. June 15, 2015) in support. At the outset, the Court notes that *Siers* is a review order under 28 U.S.C. §1915A. Indeed, while the Court in *Siers* held that the plaintiff alleged a plausible claim, the Court also noted that "further factual development may show that [the defendant's] actions [deploying a K-9] were reasonable under the circumstances . . . ." *Id.* at *1. Therefore, without more, the Court cannot find *Siers* dispositive here. In any event, the Court cannot find that the availability of other alternatives for discipline results in a genuine dispute of material fact affecting the outcome of the case. *Anderson*, 477 U.S. at 248. Indeed, the Court "must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. Finally, Mr. Hall's reliance on *Siers* fails to address Defendants' evidence that Mr. Hall refused to obey orders not to approach within 10 feet of the K9. [DE 46 ¶¶22-23; 5].

Mr. Hall does dispute Defendants' characterization of events on one critical fact, which the Court must address. Mr. Hall contends that he "could not comply with the commands" when he was "being bitten by the dog and being tased." [DE 57 at 8]. In support, Mr. Hall cites to his own Affidavit. [DE 56-1]. As explained above, the Court has accepted Defendants' Statement of Material Facts as undisputed due to deficiencies

18

with Mr. Hall response brief. [*See* Section III.A.]. Moreover, Mr. Hall's Affidavit contradicts Mr. Hall's own deposition testimony admitting that he did not follow commands before the K9 was deployed. [*See, e.g.,* DE 44-6 at 6, 14]. Thus, the Court may disregard this inconsistent statement in Mr. Hall's affidavit. *See James v. Hale,* 959 F.3d 307, 315 (7th Cir. 2020)("[E]very federal court of appeals permits a judge to disregard a 'sham' affidavit—typically an affidavit that contradicts prior deposition testimony.")(collecting cases)).

Finally, Mr. Hall disputes Defendant's characterization of events by contending that the force used was plainly extreme and caused him severe injury. Plaintiff seeks to dispute Defendants' evidence on this issue by asking the Court to take judicial notice of information about dog bites from unspecified law journals and from information about the Belgian Malinois dog breed obtained from wwww.quora.com. [DE 57 at 2-3, 6]. But the Court may only take judicial notice of facts if it "is supplied with the necessary information." Fed. R. Evid. 201(c). Here, Mr. Hall has failed to provide necessary information allowing the Court to do so.

In sum, the Court cannot find that Mr. Hall has put forth sufficient evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 at 322. Accordingly, the Court can only find that summary judgment for Defendants is appropriate. As Defendants' Motion for Summary Judgment resolves this case, Plaintiff's Motion for Settlement Conference will be denied as moot.

**IV.     Conclusion**

For these reasons, the Court now:

- **GRANTS** Defendants' Motion to File and Maintain Under Seal [DE 48];

- **DENIES** Plaintiff's Motion to Supplement Response to Motion for Summary Judgment [DE 59];

- **GRANTS** Defendants' Motion for Summary Judgment [DE 44]; and

- **DENIES as MOOT** Plaintiff's Motion for Settlement Conference. [DE 67].

**SO ORDERED** this 8th day of September 2025.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge